## JORDAN v. LANG.

1. The meaning of one portion of a charge determined by comparison with another.
2. The use of running water for irrigating purposes for twenty years establishes a prescription, although the same amount was not actually used during every year of that period.
3. Alleged error in a hypothetical charge not considered.
4. An omission to charge a proposition not requested, not considered.
5. An adverse use of water for twenty years against successive owners of the servient soil, is sufficient to establish a prescription.
6. Ineffectual protests short of the assertion of a legal right can have no effect in preventing the presumption of a grant from adverse use, but rather tends to strengthen the character of the use as adverse.
7. The owner of a dominant tenement has the right to divert and use so much water as he has by his labor added to the quantity in the running stream.

Before HUDSON, J., Kershaw, February, 1883.

This was an action by Valentine S. Jordan against Thomas W. Lang, commenced in 1882.    The facts of the case appear in the opinion of this court.

At the trial the plaintiff submitted the following requests to charge:

I. That a riparian proprietor has the right to have a stream which passes into and through his land, to flow in a volume not materially diminished in quantity.

II. That plaintiff has the right to use the water of Jumping Gully Creek for purposes of irrigation, and that while defendant has the same right, he must return the water to its channel in a sufficient quantity for the use of plaintiff.

III. That Gillis Ditch is the natural channel of Jumping Gully Creek, the water having run in that channel for so long a time, and that the defendant should prove that there had been another channel, and that he or his privies in estate had made Gillis Ditch an artificial channel.

IV. That if the waters of Jumping Gully had run in Gillis Ditch for twenty years, that ditch thereby became a natural channel, and plaintiff has the right to have it to flow in that channel.

V. That to establish *adverse use*, the defendant must prove that during twenty years, he, or those under whom he claims, have used *all the water* of Jumping Gully Creek as they pleased; that they have so used it *continuously every year ;* that such use prevented a *like use* by the plaintiff during all that time; and that such use was acquiesced in by the plaintiff all that time.

VI. That the jury may consider all protests against the use of the water by defendant, by the plaintiff, or other riparian proprietors, or any acts from which there may be inferred that he did not claim an adverse right, as rebutting that claim.

In answer to plaintiff's requests to charge, his honor said:

Request 1.—Correct.

Request 2.—I charge you that.

Request 3.—This is submitted to jury as a question of fact.

Request 4.—This depends on circumstances. If its running depends on the annual labor of Lang, the case would be altered.

Request 5.—I cannot charge you this, for it depends on circumstances. It is not necessary for defendant to prove that he used *all* the water, but only so much as he or they desired, or their wants required.

Request 6.—The jury must consider all the evidence, and give to it such force as they may deem it entitled to, but protests of the plaintiff against the defendant's use of the water for purposes of irrigation, if the use was persisted in in spite of these protests, is rather a circumstance going to show adverse use than to show the contrary.

The presiding judge charged that the proprietor of land through which a natural water course runs has the right to have the water of the stream flow into his land, so that he may use it for domestic purposes, irrigation, or in any other way he may need it. So that if the jury believed that the defendant diverted the waters of Jumping Gully Creek, running in what is called Gillis Ditch, and thereby caused the plaintiff to lose his rice crops, as he claimed, the plaintiff should have a verdict, unless the defendant had established a right to the use of the water by prescription or some other way. That defendant set up, in defence, the right to the water by adverse use for twenty years, and if he proved this to their satisfaction, plaintiff could not recover. Defendant claimed that he, and those under whom he claims, had for twenty years used the waters for irrigating rice. Such use must have been open, notorious, and without the acquiescence of plaintiff and those under whom he claims title. Any use of the water of the stream, by defendant and those under whom he claims title, by which they diverted from the stream any water which they could not return to it when it left their land, was injurious to plaintiff and therefore adverse and an unreasonable use of the water by defendant.

To establish such adverse use it was not necessary that defendant should prove that he, and those under whom he claimed title, had each year used all the water or any definite quantity of the waters of the creek, or in any definite manner; but it was sufficient if he proved that they had, during any year prior to the

one complained of, used all the water, or as much as was used that year, or could have used it through their gates if they wished, and they had, during the time, used such quantity of the water as they desired or their wants required; in other words, that they used and had vents of sufficient capacity to use all the water as they pleased for irrigation during the twenty years. It was not necessary to prove that the water was thus used *continuously* every year by them; but it was sufficient to prove that they were in the habit of using the water, and if they failed to use the water at any time, because their dams were out of order and needed repairs, or because their business did not require it, or they did not wish to use the water, such temporary break in the use did not defeat the prescription or interrupt the adverse use. Such use need not have been against the plaintiff during the whole twenty years, but it is sufficient if it was against those under whom plaintiff claims title for a portion of the time, provided they were of age and in a condition to assert their rights.

The jury may consider all the evidence and give to it such force as they may consider it entitled to, but the protests of the plaintiff against the defendant's use of the water, if the use was persisted in in spite of those protests, is rather a circumstance going to show adverse use than the contrary. If the plaintiff had every day in the year gone to Lang and said: "Mr. Lang, I protest against the use you are making of the water of the creek, and forbid you so using it," but did not take steps to interrupt the use by some legal means, the continued use by defendant, in spite of these protests, only strengthens the adverse use. The same is true of the submission of the question of riparian rights to arbitration. The offer to submit, the arbitrators never having acted, and the fact that defendant persisted in the use of the water in spite of such offer to submit to arbitration, is a circumstance going to strengthen the adverse use, because the defendant's willingness to submit to arbitration might have been due to his consciousness of his right.

If the jury believed from the evidence that water passing through Gillis Ditch was created, or brought into use, by the annual labor of Lang and those under whom he claims, and but for the labor and expense of Lang and those under whom he

claims, it could not have been utilized, that would tend to give him the right to the use of the water, and if he does not disturb the natural flow, but increases it, he would have the right to such increase, as by annual purchase, and Jordan would not have the right to complain.

The jury rendered a verdict for defendant, and plaintiff appealed.

*Messrs. J. T. Hay* and *W. H. Lyles,* for appellant.

*Messrs. J. D. Kennedy* and *J. R. Abney,* contra.

February 16, 1885. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. This was an action brought in 1882 against the defendant for diverting the water of Jumping Gully Creek, which, as the plaintiff alleged, he had the right to use and to have the same flow through his land in the natural and usual manner. The defendant's land lies above that of the plaintiff, and he admitted that in the dry year of 1881 he had used all the water as to which complaint was made in irrigating his rice fields, but insisted, first, that the water was not drawn from the natural stream of Jumping Gully Creek, but from an artificial channel known as "Gillis Ditch," which his ancestors, at least thirty years ago, had dug and banked and kept repaired through his land, in order to divert most of the water of the creek from its natural channel for their own use; that the plaintiff's land was not located on the creek proper, but below that of the defendant, and somewhere near the lower terminus of this artificial channel, and therefore plaintiff had no right to complain of defendant's use of water, which he and those under whom he claims had at great expense provided for themselves. And, second, if it should be determined that the plaintiff has any rights of the nature claimed in the water running in Gillis Ditch, then that the defendant had a prescriptive right to the use of the water for purposes of irrigation, arising from the use of the same by himself and those under whom he claims for more than thirty years.

The case came on for trial before Judge Hudson and a jury.

The plaintiff made requests to charge, some of which were charged as presented, some with modifications, and others were declined. Under the charge the jury found for the defendant and the plaintiff appeals. As to the first defence the judge charged that a riparian proprietor has the right to have a stream which passes through his land flow in a volume not materially diminished in quantity, and left it to the jury to say whether Gillis Ditch was the natural channel of Jumping Gully Creek, remarking that if the waters of Jumping Gully Creek had run in Gillis Ditch for more than twenty years, the ditch thereby became the natural channel, unless it was made to run there by the annual labor of Lang, the defendant. If they should find that the ditch was in fact Jumping Gully Creek, then the plaintiff had the right to use the water for the purposes of irrigation, and that while defendant had the same right it was incumbent on him to return the water to its channel in a quantity sufficient for the use of the plaintiff. As to the second defence, the prescriptive right to the use of the water claimed by the defendant, the character of the charge will be considered in the examination of the exceptions to it, which will be considered in their order.

The first exception charges that his honor erred in instructing the jury that such use of *any* of the water of Jumping Gully Creek by the defendant, so that he could not return it to the creek after it had been used, was an unreasonable use of said water, and as such adverse to plaintiff.

We are not quite sure that we clearly apprehend what is the meaning of this exception, but as we understand it, the alleged error consists in charging that the failure to return *any* of the water, even the one-thousandth part of the flow of the stream, was an unreasonable use of the water, and as such adverse to plaintiff. If this be the point made, we think it very manifest that the judge meant adverse *quoad hoc*, and nothing more. He says not returning "was an unreasonable use of *said water*, and (to that extent) was adverse." As matter of fact none of the water drawn from the ditch by the defendant was ever returned. It seems that the Langs, in digging Gillis Ditch to carry the water of the creek, located it on higher ground than the lowlands cultivated in rice, upon which the water was used, so that

when the water was drawn off it could never be returned, but passed in the opposite direction and fell into another (big) ditch. The defendant had the right to irrigate his fields and is not chargeable with what water was absorbed or evaporated, and none of the remainder was returned. We must consider all the parts of the charge as a whole, and we find that the judge adopted the second request to charge "that the plaintiff had the right to use the water of Jumping Gully Creek for the purpose of irrigation, and that while the defendant had the same right, he must return the water to its channel in a sufficient quantity for the use of the plaintiff."

The second exception charges that "the judge erred in instructing the jury that the defendant, to establish adverse use as against the plaintiff, need not prove that he used any *definite amount of water*, or in any definite manner, but only that he and those under whom he claimed, used so much as he or they desired, or their wants required, during the twenty years." Under this charge the jury must have found that the defendant and those under whom he claimed used so much water as they required for twenty years—we suppose every year for that time. We think that was enough to establish the prescription without showing how much was used each year. Doubtless more was needed in one year than another, and there would always be difficulty in gauging the precise amount. In such cases the prescription is held to apply to the capacity rather than actual user. *Cowell* v. *Thayer*, 5 *Metc.*, 258.

It seems to us that the easement to use water for the purpose of irrigation is somewhat analogous to that of backing water for mill privileges. In such cases the principle is thus stated by Chief Justice Shaw in the case above cited : "Upon the whole we think the true rule is this, that when one has acquired a prescriptive right to a constant mill privilege by keeping up and using a dam more than twenty years, which dam, in its usual operation, would raise the water to a given height, and has used it at his own pleasure at that height, without any claim of right on the part of any other person, to have it drawn, or kept drawn, for any part of the year, or upon any definite occasion, he has a right to retain it at the same height, although from the former leaky con-

dition of the dam, the rude construction of the machinery, or the lavish use and waste of the stream, the water has not in fact been constantly or usually kept up to that height. If, therefore, he repairs the dam without so changing it as to raise the water higher than the old dam when tight and in repair would raise it, or uses it in a different mode, and thereby keeps up the water more constantly than before, it is not a new use of the stream for which an adjacent owner can claim damages, but a use conformable to his prescriptive right," &c.

The third exception is that his honor "erred in instructing the jury that the defendant, to establish adverse use, need not prove that he and those under whom he claims used the water of the creek continuously every year for twenty years, but it was sufficient for him to prove that he or they were in the habit of using the water, and if they failed so to use it any year on account of any accident, such as the breaking of the dam, or because their business did not require it, or they did not wish so to use it, that such break in the use did not defeat the prescription." This charge was entirely hypothetical, as it does not appear that there were any facts in the case tending to show that there was any neglect of, or accident to, the dam for a single year, or that there was any intention to abandon the use of the water. It was a question of intention. *Parkins* v. *Dunham*, 3 *Strobh.*, 223.

The fourth exception relates to an alleged omission to charge upon a point not made in the requests, and therefore need not be considered.

The fifth exception complains that it was "error to instruct the jury that the adverse use did not have to be proved against the plaintiff during the twenty years; but if proved for twenty years against the plaintiff and those under whom he claims, it was sufficient to establish the prescription." The plaintiff did not acquire his title until 1864, nor commence regularly to cultivate rice (for which the water was desired) before 1879; so that unless the use of the defendant and those under whom he holds affected Whittaker, the grantor of plaintiff, there could be no easement as against the plaintiff or any recent purchaser. But the use in the manner and for the time required affected the land itself. "If there has been the use of an easement for twenty years unex-

plained, it will be presumed to be under a claim of right and adverse, and be sufficient to establish a title by prescription, and to authorize the presumption of a grant, unless contradicted or explained," &c. *Chalk* v. *McAlily*, 11 *Rich.*, 153; *Angel*, 214; *Washburn*, 157, 160; and the burden of proof is on the party resisting the claim after use for twenty years is proved. *Washburn*, 135, 136.

The sixth exception complains that it was error to instruct the jury "that the protests of plaintiff against the use of the water by the defendant and the fact that controversies had arisen between the proprietors of the lands along the stream as to the use of the water, and the plaintiff and defendant and other proprietors had agreed to submit their rights to arbitration if the use was persisted in, have a tendency to show adverse use rather than the contrary; while it is contended that the facts shown should have been submitted to the jury as tending to show a non-acquiescence by the plaintiff in such use, and thereby rebutting the presumption of a grant," &c.

It appears that the complaint of McRae was not that the water which he had the right to use had been taken from him, but that his corn lands had been overflowed with too much water, and that the protests of the plaintiff were not probably made before he commenced cultivating rice in 1879, which was after the necessary use for twenty years had expired.

But if not, we do not see that the judge was in error. While the cases are not in accord upon the subject, it seems to us that the weight of authority is in favor of the proposition as announced by the judge, that ineffectual protests short of the assertion of a legal right can have no effect in preventing the presumption of a grant from adverse use, but rather tends to strengthen the character of the use as adverse. The question is fully considered in the case of *Lehigh Valley R. R. Co.* v. *McFarlan*, 43 *N. J.*, 616, where it is said: "Protests and remonstrances by the owner of the servient tenement against the use of the easement rather add to the strength of the claim of a prescriptive right; for a holding in defiance of such expostulations is demonstrative proof that the enjoyment is under a claim of right hostile and adverse; and if they be not accompanied by

acts amounting to a disturbance of the right in a legal sense, they are no interruptions or obstructions of the enjoyment." Again, "If such protests and denials, unaccompanied by an act which in law amounts to a disturbance and is actionable as such, be permitted to put the right in abeyance, the policy of the law will be defeated, and prescriptive rights be placed upon the most unstable of foundations." *Ibid*, 629.

The seventh and last exception complains that the "judge erred in instructing the jury that if it was proved that the quantity of water in the channel of Jumping Gully Creek was increased by the annual labor of defendant and those under whom he claimed, that the defendant might claim the right to use such water as by annual purchase, without further instructing them that such use must be limited to the quantity so increased, and that such annual purchase did not authorize the use of the entire creek." It seems that the only matter here objected to was an omission to charge expressly the limitation "as to the quantity so increased." As to this point there was no request to charge, and therefore the omission, if it was one, could not be the subject of exception as error. But it seems to us that the judge did make the limitation suggested in the charge itself admitted to have been given. He instructed the jury that if it was shown "that the quantity of water in the channel was *increased* by the annual labor of the defendant, he might claim the right to use *such water* as by annual purchase," &c.; "such water," that is to say the quantity of water which had been so added by labor, &c. The peculiarity of this case is that the Langs dug Gillis Ditch and kept the same in running order, and yet we have been under the necessity of applying to it some of the doctrines which properly belong only to natural streams. We cannot say that it was error of law to hold that the defendant had the right to use the water which he and his family caused to flow out of its natural into this artificial channel at least within the period of twenty years.

The judgment of this court is that the judgment of the Circuit Court be affirmed.